IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

HUGO LOVO; BASHAR MASOUD; LUIS
GOMEZ; MARK URBINA; LUIS
CASTELLANOS; KAIMA C. WILDER;
SURAJ BAJRACHARYA; ALFHEED
KHALID; TARIQ ALFHEED, AND
ALL THOSE SIMILARLY SITUATED,

*Plaintiffs,*

V.

EXPRESS COURIER INTERNATIONAL,
INC., d/b/a LSO AND LSO FINAL MILE;
RICK KERRIGAN; CHARLES MOYER;
LLOYD PRICE; LONE STAR HOLDINGS,
INC., d/b/a LONE STAR OVERNIGHT, LONE
STAR OVERNIGHT, LLC, LSO, LSO
PARCEL; AND RICHARD T. JONES,

*Defendants*

CIVIL ACTION NO. 4:16-cv-853

FLSA COLLECTIVE ACTION
JURY TRIAL DEMANDED

## COMPLAINT

Plaintiffs, Hugo Lovo ("Lovo"), Bashar Masoud ("Masoud"), Luis Gomez ("Gomez"), Luis Castellanos ("Castellanos"), Mark Urbina ("Urbina"), Kaima C. Wilder ("Wilder"),  Suraj Bajracharya ("Bajracharya"), Alfheed Khalid ("Khalid"), and Tariq Alfheed ("Alfheed") (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, file this Complaint against (a) Express Courier International, Inc. ("Express"), d/b/a LSO and LSO Final Mile, Rick Kerrigan ("Kerrigan"),  Charles Moyer ("Moyer"), and Lloyd Price ("Price"), each of whom is/was at times relevant hereto either an officer and/or manager of Express; and (b) Lone Star Holdings, Inc., d/b/a Lone Star Overnight, Lone Star Overnight, LLC, LSO, and LSO

Parcel, and Richard T. Jones ("Jones"), who at times relevant hereto is/was either an officer, director or manager of LSO. All of said defendants are referred to herein collectively as "Defendants." In support of its claims, Plaintiffs, for themselves and those similarly situated, show in support hereof as follows:

## I.  INTRODUCTION AND SUMMARY

1.   This lawsuit is filed to recover all unpaid overtime wages and other damages under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and the Federal Portal-to-Portal Act, 29 U.S.C. §§ 251-262, on behalf of local package delivery drivers located within a ten-state area who work/worked for Express delivering packages to local businesses and residences during the period of time from July 1, 2015, forward.

2.   Express is in the business of delivering thousands of packages daily on behalf of their customers. Those deliveries are made by Plaintiffs in cargo vans, pickup trucks, cars and SUV's weighing 10,000 pounds or less. Rather than using employees to accomplish those deliveries, Express hires hundreds of drivers, including Plaintiffs and putative plaintiffs, as "independent contractors" or "owner-operators," thereby avoiding the much larger financial burden associated with a traditional employee payroll. Each delivery driver owns his or her own vehicle, but Express and LSO, together with the other individual defendants named in this lawsuit, direct and control major aspects of Plaintiffs job tasks, as well as the economic realities of that relationship.

3.   Plaintiffs are paid a piece rate of a set amount per each package delivered. That rate is (and has been) unilaterally adjusted downward at Defendants' discretion.

4.   As a condition of employment, each employee, including Plaintiffs and putative plaintiffs, is made to sign a form agreement, acknowledging that he or she is an "independent contractor." As shown below, Defendants then proceed to manage, dictate and oversee all aspects of Plaintiffs'

work, leaving Plaintiffs' little opportunity to enhance his or her profits, or otherwise conduct business as a true independent contractor.

5.    The core issue in this lawsuit is whether Plaintiffs and putative plaintiffs are truly independent contractors, as defined by the FLSA, the regulations promulgated thereunder, and applicable case law. If Plaintiffs and putative plaintiffs are not true independent contractors, then they are due overtime compensation for all hours each of them worked in excess of 40 hours during any workweek, plus other applicable damages under the FLSA.

6.    Defendant LSO, also in the same business as Express, purchased Express in 2015. Subsequent to that purchase, upon information and belief, Express and LSO caused assumed name certificates to be filed in each of the ten states in which Express and LSO do business, acknowledging that Express was using the name(s) "LSO Final Mile" and/or "LSO" to conduct business in those states.

7.    Express furnishes the necessary employees (Plaintiffs and putative plaintiffs) to make deliveries for and on behalf of LSO, and at the direction of LSO. Discovery will be required to determine further details of the exact arrangement between Express and LSO.  The control over the Plaintiffs and putative plaintiffs makes LSO a joint employer of Plaintiffs and the putative plaintiffs under the FLSA.

8.    The individual persons named as defendants herein are alleged to be joint employers with Express and LSO under the provisions of the FLSA.

9.    Plaintiffs and the putative plaintiffs regularly work in excess of 40 hours per workweek. Defendants engage/engaged in a scheme whereby Plaintiffs and putative plaintiffs are/were not credited with any overtime hours worked. Instead, Plaintiffs and putative plaintiffs are/were paid a piece rate for each package they delivered during their daily work shift.

10.  During the relevant time period of this lawsuit, Express employed and continues to employ numerous delivery drivers who are similarly situated to Plaintiffs, and who have suffered a loss of overtime compensation due to Defendants misclassifying them as independent contractors. Plaintiffs seek certification of an FLSA collective action for all similarly situated delivery drivers located within the ten-state area (defined below) and employed by Express who, like Plaintiffs, were not paid overtime compensation for all hours worked in excess of 40 during  because they were misclassified as independent contractors.

11.  Plaintiffs, on behalf of themselves and all putative class members seek unpaid overtime wages, liquidated damages, legal fees, costs of court, post-judgment interest, and all other remedies available to them under the FLSA.

## II.   THE PARTIES. JURISDICTION AND VENUE

### a.   Plaintiff Hugo Lovo

12.  Plaintiff Lovo is an employee of Express and is a natural person who resides in Dallas County, Texas. He is a current employee of Express, having begun that employment in October 2015.

13.  Plaintiff Lovo has standing to bring this lawsuit.

14.  Plaintiff Lovo currently works for Express at its office-warehouse facility in Tarrant County, Texas, located at 2334 Franklin Dr., Fort Worth.

15.  Plaintiff Lovo is paid a piece rate of $3.00 per package delivered, which Defendants reduced from $3.45 when he first started. He regularly works in excess of 40 hours per workweek, but has not been paid time and one-half his rate of pay for each hour worked in excess of 40 in a workweek because Defendants have misclassified him as an independent contractor.

### b.   Plaintiff Bashar Masoud

16.  Plaintiff Masoud is an employee of Express and is a natural person who resides in Tarrant

County, Texas. He is a current employee of Express, having begun that employment in Sept. 2015.

17.   Plaintiff Masoud has standing to bring this lawsuit.

18.   Plaintiff Masoud currently works for Express at its office-warehouse facility in Tarrant County, Texas, located at 2334 Franklin Dr., Fort Worth.

19.   Plaintiff Masoud is paid a piece rate of $3.00 per package delivered, which Defendants reduced from $3.45 when he first started. He regularly works in excess of 40 hours per workweek, but has not been paid time and one-half his rate of pay for each hour worked in excess of 40 in a workweek because Defendants have misclassified him as an independent contractor.

### c.   Plaintiff Luis Gomez

20.   Plaintiff Gomez is an employee of Express and is a natural person who resides in Tarrant County, Texas. He is a current employee of Express, having begun that employment in July 2015.

21.   Plaintiff Gomez has standing to bring this lawsuit.

22.   Plaintiff Gomez currently works for Express at its office-warehouse facility in Tarrant County, Texas, located at 2334 Franklin Dr., Fort Worth.

23.   Plaintiff Gomez is paid a piece rate of $3.00 per package delivered, which Defendants reduced from $3.45 when he first started. He regularly works in excess of 40 hours per workweek, but has not been paid time and one-half his rate of pay for each hour worked in excess of 40 in a workweek because Defendants have misclassified him as an independent contractor.

### d.   Plaintiff Mark Urbina

24.  Plaintiff Urbina is an employee of Express and is a natural person who resides in Tarrant County, Texas. He is a current employee of Express, having begun that employment in July 2015.

25.  Plaintiff Urbina has standing to bring this lawsuit.

26.  Plaintiff Urbina currently works for Express at its office-warehouse facility in Tarrant County, Texas, located at 2334 Franklin Dr., Fort Worth.

27.  Plaintiff Urbina is paid a piece rate of $3.00 per package delivered, which Defendants reduced from $3.45 when he first started. He regularly works in excess of 40 hours per workweek, but has not been paid time and one-half his rate of pay for each hour worked in excess of 40 in a workweek because Defendants have misclassified him as an independent contractor.

### e.    Plaintiff Luis Castellanos

28.  Plaintiff Castellanos is an employee of Express and is a natural person who resides in Tarrant County, Texas. He is a current employee of Express, having begun that employment in January 2016.

29.  Plaintiff Castellanos has standing to bring this lawsuit.

30.  Plaintiff Castellanos currently works for Express at its office-warehouse facility in Tarrant County, Texas, located at 2334 Franklin Dr., Fort Worth.

31.  Plaintiff Castellanos is paid a piece rate of $3.00 per package delivered, which Defendants reduced from $3.45 when he first started. He regularly works in excess of 40 hours per workweek, but has not been paid time and one-half his rate of pay for each hour worked in excess of 40 in a workweek because Defendants have misclassified him as an independent contractor.

### f.    Plaintiff Kaima C. Wilder

32.  Plaintiff Wilder is an employee of Express and is a natural person who resides in Tarrant County, Texas. She is a current employee of Express, having begun that employment in March 2016.

33.  Plaintiff Wilder has standing to bring this lawsuit.

34.  Plaintiff Wilder currently works for Express at its office-warehouse facility in Tarrant County, Texas, located at 2334 Franklin Dr., Fort Worth.

35.  Plaintiff Wilder is paid a piece rate of $3.00 per package delivered, which Defendants reduced from $3.45 when she first started. She regularly works in excess of 40 hours per workweek, but has not been paid time and one-half her rate of pay for each hour worked in excess of 40 in a workweek because Defendants have misclassified her as an independent contractor.

### g.    Plaintiff Suraj Bajracharya

36.  Plaintiff Bajracharya is an employee of Express and is a natural person who resides in Tarrant County, Texas. He is a current employee of Express, having begun that employment in August 2015.

37.  Plaintiff Bajracharya has standing to bring this lawsuit.

38.  Plaintiff Bajracharya currently works for Express at its office-warehouse facility in Tarrant County, Texas, located at 2334 Franklin Dr., Fort Worth.

39.  Plaintiff Bajracharya is paid a piece rate of $3.00 per package delivered, which Defendants reduced from $3.45 when he first started. He regularly works in excess of 40 hours per workweek, but has not been paid time and one-half his rate of pay for each hour worked in excess of 40 in a workweek because Defendants have misclassified her as an independent contractor.

### h.    Plaintiff Alfheed Khalid

40.  Plaintiff Khalid is an employee of Express and is a natural person who resides in Tarrant County, Texas. He is a current employee of Express, having begun that employment in August 2015.

41.  Plaintiff Khalid has standing to bring this lawsuit.

42.  Plaintiff Khalid currently works for Express at its office-warehouse facility in Tarrant County, Texas, located at 2334 Franklin Dr., Fort Worth.

43.  Plaintiff Khalid is paid a piece rate of $3.00 per package delivered, which Defendants reduced from $3.45 when he first started. He regularly works in excess of 40 hours per workweek, but has not been paid time and one-half his rate of pay for each hour worked in excess of 40 in a workweek because Defendants have misclassified him as an independent contractor.

### i.   Plaintiff Tariq Alfheed

44.  Plaintiff Alfheed is an employee of Express and is a natural person who resides in Tarrant County, Texas. He is a current employee of Express, having begun that employment in August 2015.

45.  Plaintiff Alfheed has standing to bring this lawsuit.

46.  Plaintiff Alfheed currently works for Express at its office-warehouse facility in Tarrant County, Texas, located at 2334 Franklin Dr., Fort Worth.

47.  Plaintiff Alfheed is paid a piece rate of $3.00 per package delivered, which Defendants reduced from $3.45 when he first started. He regularly works in excess of 40 hours per workweek, but has not been paid time and one-half his rate of pay for each hour worked in excess of 40 in a workweek because Defendants have misclassified him as an independent contractor.

### j.   FLSA Putative Collective Action Members

48.  The putative collective action members are all current and former delivery drivers of Defendants who drive cargo vans, pickup trucks, sedans and SUV's weighing 10,000 pounds or less. All collective action members are classified by Defendants as independent contractors who, like Plaintiffs, are/were the victims of Defendants' scheme of creating fictitious independent contractor relationships in order to avoid payment of overtime compensation.

49.  All of the putative collective action members are similarly situated to Plaintiffs and to one another, within the meaning of Section 216(b) of the FLSA.

### k.   Defendant Express Courier International, Inc.

50.  Defendant Express is a foreign for-profit corporation whose home office is located in the State of Tennessee. It maintains and does business out of office-warehouses in multiple states, including Texas. One of its multiple Texas office-warehouse locations is in Tarrant County at 2334 Franklin Dr., Fort Worth. Plaintiffs work out of the Franklin Dr. location.

51.  Upon information and belief, Express was sold to Defendant LSO in mid-2015. Subsequent to that sale, Express started doing business as "LSO Final Mile" and/or "LSO" pursuant to assumed name certificates filed with the ten states in which Express does business.  Express issues payroll checks to Plaintiffs under the Express name and from its bank account. The independent contractor agreements made the subject of this lawsuit are signed by Express. Express supervises the details of Plaintiffs work as delivery drivers, along with LSO.

52.  Express and LSO jointly direct Plaintiffs in their detailed job duties and maintain control over the economic realities of Plaintiffs and putative plaintiffs' employment.

### l.   Defendant Lone Star Holdings, LLC

53.  Defendant Lone Star Holdings, LLC, is a foreign limited liability company doing business in Texas.  It operates under the following assumed names: Lone Star Overnight, LLC, LSO and

LSO Parcel. Richard T. Jones is LSO's President and Director.

54.   LSO a joint employer of Plaintiffs, together with Express.

55.   Upon information and belief, LSO and/or Express lease the building in Fort Worth from which Plaintiffs and putative plaintiffs work. Express creates drivers' delivery schedules and sets drivers work schedules, and determines rates of pay for drivers, and, upon information and belief, furnishes the software systems utilized by drivers to map deliveries and communicate with the company.

### m.    Defendants Rick Kerrigan and Charles Moyer

56.   Defendant Kerrigan, upon information and belief, is the chief operating officer of Express. Defendant Moyer, upon information and belief, is the chief executive officer of Express. Each of them has/had operational control of the employees of Express, including Plaintiffs and putative plaintiffs. They possess the power to hire and fire, to supervise and control work schedules and conditions of employment, determine rates of pay, and maintain or control employment records. Each of Kerrigan and Moyer possesses the authority to control the economic reality of Plaintiffs and putative plaintiffs' working arrangement with Defendants. As such, Plaintiffs contend that Kerrigan and Moyer are each joint employers of Plaintiffs and the putative plaintiffs.

### n.    Defendants Richard T. Jones and Lloyd Price

57.   Defendant Jones, upon information and belief, is the president of LSO.  Defendant Price, upon information and belief, is the manager of the Fort Worth, Texas and Louisiana operations of Express. Each of Jones and Price has operational control of the employees of Express, including Plaintiffs and the putative plaintiffs, as well as the employees of Express.  They possess the power to hire and fire, supervise and control work schedules and conditions of employment, determine rates of pay, and maintain or control employment records. Each possesses the power

and authority to control the economic reality of Plaintiffs and putative plaintiffs working arrangement with Express. As such, Plaintiffs contend that Jones and Price are each joint employers of Plaintiffs and putative plaintiffs.

## l.    Jurisdiction and Venue

58.  The Court has subject matter jurisdiction over this action based on federal question jurisdiction, 28 U.S.C. § 1331, because Plaintiffs base their claims and the claims on behalf of the putative collective action members on federal law, 29 U.S.C. §§ 201, et seq.

59.  The Court has personal jurisdiction over Defendants based on both general and specific jurisdiction.

60.  During all times relevant to this lawsuit, Defendants have done and continue to do business in the State of Texas.

61.  At all times relevant to this lawsuit, each of Express and LSO has been an "enterprise engaged in commerce," as defined by the FLSA.

62.  At all times relevant to this lawsuit, each of Express and LSO has employed, and continues to employ, two or more persons.

63.  At all times relevant to this lawsuit, each of Express and LSO employed, and continues to employ, two or more employees who handled, sold or otherwise worked on goods or materials that have been moved in or produced for commerce by any person. For example, each of Express and LSO and their employees handle and/or worked on packages and the contents of packages that were moved in or produced for commerce. Other examples include software, warehouse equipment, tools, office and maintenance supplies, telephones, computers, internet services and internet equipment.

64.  On information and belief, at all times relevant to this lawsuit, each of Express and LSO has

had annual gross sales or volume in excess or $500,000.

### III.    FACTS AND ISSUES COMMON TO PLAINTIFFS AND PUTATIVE PLAINTIFFS

65.  Express owns and operates a parcel delivery business. It has numerous locations throughout Texas and nine other states from which it operates.   Plaintiffs and a portion of the putative plaintiffs work out of the Fort Worth location.   Other putative plaintiffs who are similarly situated to Plaintiffs work out of 29 other distribution warehouses located in nine states.   All Plaintiffs and putative plaintiffs are subject to the same company-wide pervasive policy of misclassification as independent contractors, which has the effect of denying them overtime compensation.  Express's misclassification policy is, in fact, reduced to a written owner-operator agreement that all Plaintiffs and putative plaintiffs are required to sign before they are permitted to work for Express as drivers at any of its 30 locations.

66.  Express drivers, such as Plaintiffs and putative plaintiffs, deliver thousands of packages daily. Upon information and belief, Express employees approximately 1000 to 1400 of these improperly classified drivers. Plaintiffs and putative plaintiffs typically work in excess of 40 hours per workweek, six or seven days per workweek, without overtime compensation.

67.  Defendants have engaged in a scheme whereby Plaintiffs and putative plaintiffs are/were not credited with any overtime hours worked. Instead, Defendants pay Plaintiffs and putative plaintiffs a set piece rate for each package delivered. Defendants' justify not paying Plaintiffs and putative plaintiffs overtime on the premise that its drivers are not employees, but rather independent contractors and thus exempt from the overtime provisions of the FLSA.

68.  There likely will be limited disagreement amongst the parties regarding the number of overtime hour worked because Plaintiffs and putative plaintiffs generally worked a set schedule. Nor is it likely that the average hourly rate of pay will be the subject of dispute due to the fact

that calculating that rate is well established to be the total piece rate pay received by the employee weekly divided by the total hours worked in that workweek. There are no bonuses or other forms of compensation to be considered.  And there are no known exemptions (employee coverage) claims that apply to Plaintiffs and/or putative plaintiffs other than Defendants' claim that Plaintiffs and putative plaintiffs are independent contractors.

69.  This case will turn on the determination of whether Plaintiffs and putative plaintiffs are exempt as independent contractors.

70.  Plaintiffs assert claims for overtime and other damages under the FLSA. Plaintiffs do not believe that Express can carry its burden of proving that Plaintiffs are/were independent contractors while working as delivery drivers for Express. Therefore, Plaintiffs and putative plaintiffs are entitled to recover from Express overtime pay at the rate of one and one-half their regular rate of pay for all hours worked in excess of 40 during any and all workweeks, together with liquidated damages, legal fees, court costs, and post-judgment interest.

71.  Plaintiffs seek an order from this Court certifying a collective action class which includes all persons employed by Express from July 15, 2015, forward, the date that Express was purchased by LSO. The Class is specifically defined as follows:

> All individuals who work/worked for Express Courier International, Inc., d/b/a LSO and/or LSO Final Mile, driving vehicles whose gross vehicle weight rating is or was 10,000 pounds or less, in the ten-state area of Texas, Arkansas, Louisiana, Tennessee, Oklahoma, Alabama, Florida, Kentucky, Mississippi, and Missouri from July 1, 2015, forward (the Class Period), as package delivery drivers, and who were classified as "independent contractors" or "owner-operators" and not paid overtime compensation for any hours worked in excess of 40 in any one or more workweeks during the Class Period.

> The estimated Class is approximately 1000 members.

72.  As a condition of employment, Express requires Plaintiffs and putative plaintiffs to sign a

lengthy and non-negotiable form agreement called "Owner-operator Agreement," which mischaracterizes the relationship between Express and its drivers as being one of independent contractor. The true nature of that employment arrangement is one of employee/employer. Whether this company-wide policy may be relied upon to deprive drivers overtime compensation is common to all Plaintiffs and putative plaintiffs.

73.   Plaintiffs and putative plaintiffs report to and work exclusively out of facilities owned and operated by Express and/or LSO. Drivers are not allowed to perform any work, other than the actual deliveyr of packages, outside the premises of Express and LSO and beyond the supervision of Express and LSO supervisors. Express managers closely monitor the pre-delivery work of the drivers. When drivers are engaged in their route deliveries, Express and LSO managers monitor the progress of each driver's deliveries.

74.   Plaintiffs and putative plaintiffs are required to wear shirts, hats, and identification badges, bearing the LSO or LSO Final Mile logo, and to place signs on their delivery vehicles identifying themselves as "LSO" or "LSO Final Mile" delivery drivers.

75.   Plaintiffs and putative plaintiffs are required to work fixed shifts mandated by Express and LSO each workday. If a driver is not available to cover his or her shift, that driver may lose his or her route to another driver.

76.   Plaintiffs and putative plaintiffs are required to check in and out with a supervisor and/or dispatcher each work day. Dispatchers and/or managers monitor drivers' work progress (deliveries) during the day.

77.   Plaintiffs and putative plaintiffs' cell phones are loaded with software, required by Express and LSO that creates the routes and directions for each delivery. Defendants electronically monitor Plaintiffs' deliveries throughout the workday using that software.

78.  Defendants require Plaintiffs and putative plaintiffs to work holidays, often over those drivers' objections.

79.  Defendants possess the authority to require Plaintiffs and putative plaintiffs to manually sort through packages at the beginning of the first "wave" of morning deliveries in order to select packages destined for each Plaintiff or putative plaintiffs delivery route. Plaintiffs and the putative plaintiffs may be required to complete the same sorting process for the second wave of deliveries in the afternoon. In some instances, Plaintiffs and putative plaintiffs have protested the sorting process to Defendants, but to no avail.

80.  Plaintiffs are paid by piece rates solely determined by Express and LSO.

81.  On information and belief, Express and LSO are controlled by the same persons.

82.  On information and belief, Express and LSO entered into an agreement with one another to provide the delivery services that Plaintiffs and putative plaintiffs provide.

83.  Each of Express and LSO could hire and fire Plaintiffs and putative plaintiffs at any time.

84.  Each of Express and LSO could set Plaintiffs' and putative plaintiffs' wages.

85.  Each of Express and LSO had authority to control the manner in which Plaintiffs and putative plaintiffs performed their work, including instructing Plaintiffs and putative plaintiffs when and where to report to work.

86. Each of Express and LSO had control over Plaintiffs' and putative plaintiffs' working conditions.

87.  Each of Express and LSO engaged Plaintiffs and putative plaintiffs to perform work as a delivery driver.

88.  Plaintiffs were at all times relevant hereto under the understanding that they worked for Express and LSO as a whole, not a single entity.

89. The work Plaintiffs and the putative plaintiffs performed was not for a defined or stated period of time but was indefinite in time, more indicative of an employer-employer relationship. Based upon information and belief, this indefinite relationship was prevalent among all putative plaintiffs.

90. Plaintiffs and putative plaintiffs were not allowed, in practice, to take on any third-party work while employed by Express and/or LSO for fear of losing their routes.

91. Express and LSO each had complete authority to control all details of the employment relationship with Plaintiffs and putative plaintiffs, including setting Plaintiff's work schedules and compensation.

92. Plaintiffs had no opportunity for profit or loss depending on their skill as they were paid a fixed piece rate for the work (deliveries) they made for Express and LSO. Plaintiffs were not given the opportunity to earn more based on their skill. Plaintiffs and putative plaintiffs could only increase their income by working more efficiently and delivering a greater number of packages daily, but not through applying their skills and initiative. Plaintiffs' and putative plaintiffs' work as delivery drivers did not require any particular skill or managerial talent.

93. Plaintiffs and putative plaintiffs investment in equipment, if any, is/was minimal compared to that of Express and LSO. Plaintiffs and putative plaintiffs are/were required to use their personal vehicle or, if necessary, purchase one. Drivers also had to acquire a hand-held scanner and purchase automobile liability and cargo insurance, as well as have a suitable cell phone capable of communicating with Defendants' computers. On the other hand, Defendants incurred multi-million dollar expenses to conduct their package delivery business. For example, Defendants: have spent large sums of money upgrading and maintaining state-of-art computer programs that provide Defendants' customers the best service available in the industry; furnished

the office-warehouse facilities from which Plaintiffs and putative plaintiffs operate and the attendant mortgage or lease expense and the cost of utilities and accident/property insurance for those facilities; advertise and promote their delivery business to potential customers; incur professional fees; supply warehouse equipment for use by Plaintiffs and putative plaintiffs; purchase rolling stock to transport the packages Plaintiffs and putative plaintiffs deliver to Defendants' customers; maintain a support staff, and the payroll expense for same, in each office-warehouses from which Plaintiffs and putative plaintiffs work; incur financing expense for necessary working capital and lines of credit needed to maintain their business; incur cost of benefits provided to their support staff, managers and officers; and incur liability and other insurance coverage expenses. The comparison of Plaintiff and putative plaintiff investment, on the one hand, and Defendants' investment on the other, likely will become an issue common to all Plaintiffs and putative plaintiffs. The investment, if any, by the Plaintiffs and the putative plaintiffs versus that of Defendants will not vary from location to location to a material degree, making it a compelling issue to be addressed in a collective action.

94.   Plaintiffs and putative plaintiffs' work was integral to the business of Express and LSO, and, in fact, without delivery drivers such as Plaintiffs and putative plaintiffs those companies would have no business because Plaintiffs and putative plaintiffs deliver all packages for Express.

95.   Upon information and belief, the records concerning the number of hours worked and amounts paid to Plaintiffs and putative plaintiffs, are in the possession, custody and/or control of Defendants.

96.   Plaintiffs and putative plaintiffs, at least those currently known, have not exhibited any indication that, while working for Defendants, they are/were in business for themselves, which is a key component under Fifth Circuit case law.

## IV.   CONTROLLING LEGAL RULES

97.  The FLSA generally requires that an employer employing an employee for a workweek exceeding 40 hours must compensate that employee for hours "at a rate not less than one and one-half times the regular rate of pay." 29 U.S.C. § 207(a)(1).

98.  Plaintiffs and putative plaintiffs are not exempt from the FLSA overtime law.

99.  "Employ" means to suffer or permit work. 29 U.S.C. § 203(g).

100.  Failing to pay the required overtime premium for hours worked over 40 in a workweek is a violation of the FLSA. 29 U.S.C. § 216.

101.  An employer lacking good faith is generally subject to liquidated damages or twice the amount of unpaid overtime damages. 29 U.S.C. § 260.

102.  In order for Defendants to carry their burden of proof that Plaintiffs are exempt from coverage under the FLSA, Defendants must show that Plaintiffs, "as a matter of economic reality", are not "economically dependent upon the business to which he renders his services." *Carrell v. Sunland Construction, Inc.* 998 Fd.2d 330 (5th Cir. 1993), *citing Brock v. Mr. W Fireworks, Inc.*, 814 F2d 1042, 1043, 1054 (5th Cir.), *cert. denied*, 484 U.S. 924. 108 S.Ct. 286, 98 L.Ed.2d 246 (1987). "Essentially, our task is to determine whether the individual is, as a matter of economic reality, in business for himself." *Carrell* at 333.

102.   A corporate officer with operational control or other person with operational control of a corporation's employees is an employer along with the corporation and is jointly and severally liable under the FLSA for unpaid wages and liquidated damages. *See Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984).

## V.   CLAIMS FOR DAMAGES

103.  Plaintiffs repeat and reallege each and every allegation of this Complaint as if fully set

forth here.

104.   This action is authorized and instituted pursuant to the FLSA. 29 U.S.C. §§ 201, *et seq*.

105.   All conditions precedent, if any, have been met.

105.   At all times material hereto, Plaintiffs are/were employees under the FLSA. 29 U.S.C. § 203(e).

106.   At all times material hereto, each Defendant was an eligible and covered employee under the FLSA. 29 U.S.C. § 203(d).

107.   At times, Plaintiffs and the putative action members worked in excess of 40 hours per seven-day workweek in the time period relevant to this lawsuit.

108.   At all times material hereto, Plaintiffs and the putative action members were and are entitled to overtime compensation at one and one-half times the regular rate of pay.  29 U.S.C. § 207(a)(1).

109.   At all times material hereto, the putative collective action members are/were similarly situated to the Plaintiffs and to each other and are/were employees under the FLSA. 29 U.S.C. § 203(e).

110.   Defendants failed to pay Plaintiffs and the putative collective action members' overtime compensation at one and one-half times their regular rates of pay for all hours worked over 40 in each and every seven-day workweek.

111.   Defendant's violations of the FLSA were and are willful within the meaning of 29 U.S.C. § 255(a).  Plaintiffs and putative collective action members specifically plead recovery for the time period of three years preceding the date this lawsuit was filed forward for their FLSA claims.

112.   Defendants have not made a good faith effort to comply with the requirements of 29 U.S.C. § 260. Therefore, Plaintiffs and putative collection action members are entitled to

liquidated damages.

## VI.    COLLECTIVE ACTION ALLEGATIONS

113.  "When the employer's actions or policies were effected on a company-wide basis, notice of a Fair Labor Standards Act ___ may be sent to all similarly situated persons on a company-wide basis." *Ryan v. Staff Care, Inc*., 497 F. Supp. 2d 820, 825 (N.D. Tex. 207) (certifying nationwide collective action in FLSA case).

114.  Therefore, Plaintiffs seek to represent a collective action under 29 U.S.C. § 216(b) on behalf of "all current and former delivery drivers who are/were employed by Defendants pursuant to an Express operating agreement and who are/were not paid overtime compensation for all hours worked over 40 in any workweek."  The relevant time period for this class is July 1, 2015, forward. A more specific description of the class is stated in paragraph 71 of this Complaint.

115.  Plaintiffs reserve the right to establish sub-classes and/or modify class notice language as appropriate in any collective action certification motion or proceeding.

116.  Plaintiffs reserve the right to amend the definition of the putative class, or sub-classes therein if discovery and further investigation reveal that the putative class should be expanded or modified.

117.  There are common questions of law and fact applicable to the Class including the question whether Plaintiffs and putative collective action members have been misclassified and suffered unpaid overtime due to Defendant's wrongful misclassification of Plaintiffs and putative plaintiffs as independent contractors.

## VII.    JURY DEMAND

118.  Plaintiffs demand a jury trial.

## VIII.    DAMAGES AND PRAYER

119.  Plaintiffs ask the court to issue a summons for Defendants to appear and answer, and that Plaintiffs, and those persons similarly situated to Plaintiffs, be awarded a judgment against Defendants for the following:

    a.   Actual damages in the amount of unpaid overtime wages;

    b.   Liquidated damages as provided by the FLSA;

    c.   Certification of an FLSA collective action;

    d.   Post-judgment interest;

    e.   Court costs; and

    f.   All other relief to which Plaintiffs and collective action members are entitled.

/s/ Roger D. Marshall
Roger D. Marshall
State Bar No. 13040000
10604 Corvallis Dr.
Dallas, Texas 75229
Tel: 214-850-1989
Fax: 214-363-4833
E-mail: Rmarsh9558@aol.com

*Attorney for Plaintiffs*